IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
CHATTANOOGA DIVISION

| | |
|---|---|
| WILLIAM JACOB,<br><br>  Plaintiff,<br><br>v.<br><br>UNUM LIFE INSURANCE COMPANY OF AMERICA and UNUM GROUP CORP.,<br><br>  Defendants. | Civil Action No. 1:19-cv-131 |

## COMPLAINT FOR RECOVERY OF PLAN BENEFITS AND FOR THE ENFORCEMENT OF RIGHTS UNDER ERISA

COMES NOW, Plaintiff, William Jacob, and makes the following representations to the Court for the purpose of obtaining relief from Defendants' refusal to pay Long-Term Disability ("LTD") benefits due under an employee benefits plan, and for Defendants' other violations of the Employee Retirement Income Security Act of 1974 ("ERISA"):

## JURISDICTION AND VENUE

1. This Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1337 and 29 U.S.C. § 1132(e) (ERISA § 502(e)). Plaintiff's claims "relate to" an "employee welfare benefits plan" as defined by ERISA, 29 U.S.C. § 1001 et seq., and the subject Employee Welfare Benefit Plan constitutes a "plan under ERISA."

2. The ERISA statute, at 29 U.S.C. § 1133, as well as Department of Labor regulations, at 29 C.F.R. § 2560.503-1, provide a mechanism for administrative or internal appeal of benefits denials. In this case, those avenues of appeal have been exhausted and this matter is now properly before this court for judicial review.

3. Venue is proper within the Eastern District of Tennessee pursuant to 29 U.S.C. § 1132(e)(2).

**PARTIES**

4. Plaintiff, William Jacob, (hereinafter "Plaintiff"), is currently a resident of Nassau County, New York.

5. Defendant Unum Life Insurance Company of America ("Unum Life") is an insurance company authorized to transact the business of insurance in this state, and may be served with process through the Commissioner of the Tennessee Department of Commerce and Insurance, 500 James Robertson Parkway, Suite 660, Nashville, Tennessee 37243-1131.

6. Defendant Unum Life is the underwriter of LTD portion of The CVS Caremark Welfare Benefit Plan (the "Plan"), through group LTD insurance policy number 135038-001 (the "Policy"), issued to Plaintiff's former employer, CVS Pharmacy, Inc., and is the party obligated to pay benefits and to determine eligibility for LTD benefits under the Plan.

7. Under the Plan, Plaintiff's former employer is the party obligated to pay short term disability ("STD") benefits and Defendant Unum Life is responsible for administering such benefits.

8. Defendant Unum Group Corporation ("Unum Group") is the parent company of Defendant Unum Life.

9. Defendant Unum Group exercises significant control over the policies and actions of Defendant Unum Life.

10. Defendant Unum Group is the employer of all persons who acted on behalf of Unum Life.

11. Plaintiff alleges upon information and belief that Defendant Unum Group established the policies and procedures governing the payment of denial of claims, the policy for document retention and otherwise established the procedures under which the decision-makers made the decision to deny benefits that is the subject of this law suit, and was the de facto decision-maker in the Plaintiff's claim.

12. Plaintiff alleges upon information and belief that Defendant Unum Group may be served with process by and through its registered agent for service, Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203.

## FACTS

13. Plaintiff was employed by CVS Pharmacy, Inc. as a Construction Project Manager.

14. CVS Pharmacy, Inc. maintained the Plan for the benefit of its employees.

15. LTD benefits due under the Plan were funded by the Policy.

16. Plaintiff is a participant or beneficiary of the Plan and is covered by the Policy that provides LTD benefits under the Plan.

17. Plaintiff ceased work due to a disability on May 31, 2017, while covered under the Plan.

18. Plaintiff's disability is the result of a combination of symptoms related to his diagnosis of chronic Lyme Disease or other demyelinating disease; these impairing symptoms include cerebral dysfunctioning, fatigue, optic neuritis, and noise sensitivity.

19. Plaintiff has been and continues to be disabled as defined by the provisions of the LTD Plan.

20. After filing an application for STD benefits under the Plan, which are self-funded by Plaintiff's former employer, Plaintiff was approved and received STD benefits from June 1, 2017, through November 29, 2017, which was the maximum period of STD benefits allowed under the Plan.

21. Plaintiff timely filed an application for LTD benefits under the Plan on or about November 1, 2017.

22. Defendants thereafter approved Plaintiff's application, and paid benefits until January 26, 2018.

23. By letter dated January 26, 2018, Defendants notified Plaintiff that his benefits under the LTD plan were being denied, stating, in part that he was able to perform the duties of his own occupation despite his medical conditions.

24. Plaintiff appealed the denial of his LTD benefits by letter dated October 10, 2018.

25. By letter dated January 17, 2019, Unum Life denied Plaintiff's appeal, and stated that its decision was final.

26. Despite Plaintiff's submission of additional medical evidence demonstrating the extent of Plaintiff's impairments, including the supporting opinions from Plaintiff's doctors, Unum Life based it denial on the opinions of its own file-reviewing physicians who never examined Plaintiff.

27. The January 17, 2019 letter confirmed Plaintiff had exhausted his administrative remedies and had a right to bring a lawsuit under ERISA § 502(a) to challenge the denial of his benefits.

28. Plaintiff has exhausted his required administrative remedies with respect to the LTD claim.

29. Unum Life would pay any LTD benefits due out of its own funds.

30. Unum Life owed Plaintiff duties as a fiduciary of the ERISA Plan, including the duty of loyalty.

31. Unum Life was under a perpetual conflict of interest because the benefits would have been paid out of its own funds.

32. Unum Life allowed its concern over its own funds to influence its decision-making.

33. When Unum Life denies a claim before all of the contractual benefits are paid, that is referred to as a "recovery."

34. Unum Life's conflict of interest and bias is evident in the fact that it establishes monthly financial targets that are reached by denying claims whose reserves would cumulatively meet those targets.

35. The monthly financial targets for denying claims are called "recovery plans," or words to that effect.

36. The monthly targets, or "recovery plans," including the dollar amounts to be reached in terms of reserves on denied or "recovered" claims and the count of total claims that should be recovered.

37. These "recovery plans" were given by Vice Presidents (often through the Vice President's administrative assistant) in the claims department to Assistant Vice Presidents in writing and verbally.

38. The Vice President also gave to the Assistant Vice Presidents a list of claims that had been identified as potential "recoveries," which list included the names of individual insureds and the reserve amount associated with the claims of those insureds.

5

39. The list of claims that were potential recoveries, including the reserve amounts, was transferred by the Vice President by hard copy printouts.

40. The recovery plans and the list of potentially recoverable claims provided to the Assistant Vice President are disseminated by the Assistant Vice Presidents to the Directors they supervised, and are used by the Assistant Vice President to coach or supervise their Directors.

41. Directors at Unum are the employees who ultimately make the decision to approve or deny claims for benefits.

42. The recovery plans and the list of potentially recoverable claims that are given to the Assistant Vice Presidents are passed on to Directors verbally, so there will be no record of the Directors being told their monthly financial targets of "recoveries" or denied claims.

43. After the Assistant Vice Presidents pass on the recovery plans and the list of potentially recoverable claims to the Directors, the Assistant Vice Presidents shred the documents that contained the names of individual insurers and their reserve amounts.

44. The Directors use this information, and the targeted financial amounts to guide them and the claims handlers under them to deny meritorious claims in order to meet the "recovery plan" for their team.

45. In order to receive bonuses under Unum Life's incentive program, Unum Life employees are evaluated against certain criteria, which include planned claim terminations, expected liability acceptance rates, and anticipated reopen rates. (see e.g., Exhibit 1, ID Director Scorecards).

46. Internal documents reveal that targets and goals for claim closures are set at the unit level and that there are goals set for open claim recoveries (i.e., denying an open claim) per day. (See Exhibit 2, Weekly Tracking Reports).

47. In his recent deposition, Anthony Scuderi—who was an Assistant Vice President with Unum—confirmed Unum continues to target individual claims for their value; testifying that his supervising Vice President would provide him with printed sheets that included the names and financial reserve value of claimants each month; that he would copy the information in those sheets onto a spreadsheet on his personal computer; that he would then verbally disseminate that information to the claim managers he supervised; that he would shred the paper document; and that he would report back to his supervising Vice President periodically on the progress of meeting their "paid recovery" metric (Exhibit 3, selected excerpts from the deposition of Anthony Scuderi). He testified that he believed this was the common practice of all Unum AVPs. See, Id.

48. In essence, Unum Life's claims and appeals units were provided the targets for claim closures and uphold decisions and then were provided the specific claims that would meet those expectations.

49. Paul Peter, another former-Assistant Vice President for Unum, testified that he received the "recovery plan" each month from his Vice President, Maureen Griffin, and that he passed this information down to the Directors he supervised. (See Exhibit 4, selected excerpts from the deposition of Paul Peter). Paul Peter also testified that he received the list of claims that were identified as potential recoveries, which included the names of the claimants and the reserve amount associates with their claim. See, Id. Paul Peter confirmed that he and the Directors he supervised were graded and held accountable for meeting the "recovery plan" and he impressed upon his Directors the importance of meeting the planned numbers. See, Id., at p. 29-30.

7

50. Defendants' targeting of Plaintiff's claim for denial taints all evidence it developed during the review of his claim as the review was designed to reach the result of a denial, not an impartial weighing of the evidence.

51. Unum Life breached its fiduciary duties to Plaintiff, including the duty of loyalty.

52. Unum Life's decision-making process violated ERISA by failing to give the Plaintiff a full and fair review of the claim.

## FIRST CAUSE OF ACTION
## FOR PLAN BENEFITS AGAINST THE DEFENDANT
## PURSUANT TO 29 U.S.C. §§ 1132(a)(1)(B)

PLAINTIFF incorporates the allegations contained in the prior paragraphs as if fully stated herein and says further that:

53. Under the terms of the Plan, Defendants agreed to provide Plaintiff with LTD benefits in the event that Plaintiff became disabled as defined by the Plan.

54. Plaintiff is disabled and entitled to benefits under the terms of the Plan.

55. Defendants failed to provide benefits due under the terms of the Plan, and these denials of benefits to Plaintiff constitute breaches of the Plan.

56. The decisions to terminate benefits were wrong under the terms of the Plan.

57. The decisions to terminate benefits and decision-making processes were arbitrary and capricious.

58. The decisions to deny benefits were not supported by substantial evidence in the record.

59. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has been damaged in the amount equal to the amount of benefits to which she would have been entitled to under the Plan.

8

60. As a direct and proximate result of the aforementioned conduct of the Defendants in failing to provide benefits for Plaintiff's disability, Plaintiff has suffered, and will continue to suffer in the future, damages under the Plan, plus interest and other damages, for a total amount to be determined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court grant her the following relief in this case:

**On Plaintiff's First Cause of Action**:

1. A finding in favor of Plaintiff against Defendants;

2. Damages in the amount equal to the disability income benefits to which she was entitled through date of judgment, for unpaid benefits pursuant to 29 U.S.C. § 1132(a)(1)(B);

3. Prejudgment and post-judgment interest;

4. An Order requiring the Plan or appropriate Plan fiduciary to pay continuing benefits in the future so long as Plaintiff remains disabled under the terms of the Plan.

5. An Order requiring Plan or appropriate Plan fiduciary to provide Plaintiff with any other employment benefits to which she would be entitled pursuant to a finding that she is disabled under the Plan or under any other employee welfare benefit plan;

6. Plaintiff's reasonable attorney fees and costs; and

7. Such other relief as this court deems just and proper.

Plaintiff further requests that the Court order Defendants to provide to Plaintiff with a bound copy of the ERISA record consecutively paginated.

Dated this 2nd day of May, 2019.

Respectfully submitted,

ERIC BUCHANAN & ASSOCIATES, PLLC
ATTORNEYS FOR PLAINTIFF


BY: */s Hudson T. Ellis*
Hudson T. Ellis (BPR #28330)
414 McCallie Avenue
Chattanooga  TN  37402
(423) 634-2506
FAX:  (423) 634-2505